UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL EARL BOSSE,<br><br>        Plaintiff,<br><br>vs.<br><br>I.D.O.C. R. BLADES, CARLIN, McKAY, HIGGINS, HANSEN, LEE, BILADEAU, CAPTAIN WOODWARD, RDU and 8-HOUSE STAFF, WARDEN'S OFFICE STAFF, AND 2 @ S.I.C.I.,<br><br>        Defendants. | Case No. 1:19-cv-00271-BLW<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Michael Earl Bosse, a prisoner in custody of the Idaho Department of Correction (IDOC), filed a civil rights action alleging that prison officials failed to protect him from being assaulted by other prisoners and that he is at a heightened risk of assault because he is a former IDOC employee and has a sex offender conviction involving a child victim. (Dkt. 2.) In his original Complaint, Plaintiff alleged that unknown prison officials ignored Plaintiff's warnings and placed him in harm's way. As a prisoner, he has little resources for discovering the identities of those alleged to caused him injury. The Court concluded that it would be more efficient to have counsel for Defendants investigate and report to the Court and Plaintiff who was involved and what happened in

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

the form of a Martinez report, than it would to require Plaintiff to amend his Complaint without having access to this information.

Defendants have filed the Martinez report, and Plaintiff has filed his Amended Complaint. (Dkt.17, 22.) Various motions filed by the parties are also pending. Having reviewed the record and considered the parties' allegations and arguments, and liberally construing Plaintiff's Amended Complaint as required by law, the Court enters the following Order permitting Plaintiff to proceed on some of his claims.

## REVIEW OF PRELIMINARY MOTIONS

Defendants filed a Motion for Reconsideration of the Initial Review Order based on the statute of limitations (Dkt. 13), without realizing that the original Complaint had been filed in a timely manner in a different case, and the failure-to-protect claims were severed from that matter and opened in this case. The Court specifically noted in the severance Order that Plaintiff would be permitted to rely on the earliest filing date for statute of limitations purposes. After Plaintiff pointed that out, Defendants filed the Martinez report so that the case could proceed. Accordingly, Defendants' Motion for Reconsideration (Dkt. 14) will be denied as moot, and Plaintiff's "Motion to Defend Initial Reviewing Judges Order and Produce Martinez Report" will be granted in part and denied as moot in part.

Plaintiff has filed a second Motion to Proceed in Forma Pauperis (Dkt. 20), which the Court will deny as moot. Plaintiff has already been granted pauper status, and that status continues through any appeal, unless revoked by this or the appellate court.

Plaintiff has filed a "Motion to Re-Do Martinez Report." (Dkt 23.) The Court will deny this request. The purpose of the Martinez report was for Defendants to provide Plaintiff with the facts necessary to amend his Complaint. It is not intended to be an investigation by a neutral party, as Plaintiff suggests. Should Plaintiff need additional information from Defendants, he may seek it in the discovery phase.

## REVIEW OF AMENDED COMPLAINT

### 1. Defendant Janalee Biladeau

After his conviction and sentencing in state court, Plaintiff arrived at the prison on January 12, 2017. Defendants produced a "Statement of Personal Safety" signed by Plaintiff and dated January 12, *2016.* (Likely, Plaintiff got the year wrong.) The statement shows that Plaintiff felt his personal safety was at an acceptable level in general population, and indicated that he would immediately notify staff if he had reason to believe his safety was in jeopardy. (Dkt. 17-2, p. 5.) Plaintiff asserts that, on the same day, after he signed the acknowledgement that he had no fear for his safety in general population, he verbally reported to unidentified RDU staff that he thought he was going to be attacked, because, when he was in jail and at court, he "was threatened on a daily basis to be killed and raped and shanked." (Dkt. 22, pp. 2-3.) There was no room for Plaintiff to be housed in the RDU when he arrived, and so he was *not* placed in the RDU unit on that date, but in Housing Unit 8, the restrictive housing unit, under the management of Sergeant Ben Lee. (Dkt. 27, p. 2.)

Sergeant Janalee Biladeau was the manager over the Receiving and Diagnostic in Housing Unit 15 at the Idaho State Correctional Institution (ISCI) on January 17-18, 2017. On January 17, Plaintiff was transferred from restrictive housing into the RDU. On January 18, he was physically assaulted by another prisoner.

Plaintiff does not state that he told Sergeant Biladeau his concerns personally or that (and, if so, how) she learned of Plaintiff's concerns through another source. Plaintiff does not allege that he gave the concern form to Sergeant Biladeau. Plaintiff simply assumes, that by virtue of her management of the RDU unit, Sergeant Biladeau knew of and ignored Plaintiff's warnings. Plaintiff has not produced a copy of the concern from he wrote on January 12, 2017, nor was one included in the Martinez Report.

Plaintiff asserts that Biladeau failed to protect him, failed to monitor and isolate violent known aggressive prisoners, and acted with deliberate indifference and reckless disregard in violation of his Eighth Amendment rights. These are merely restatements of the legal standard, and the Complaint contains insufficient allegations to support a plausible claim under any of these theories against Biladeau. Plaintiff may amend his Complaint at a later date if he discovers facts supporting Biladeau's personal participation in the alleged violation.

2. **Defendant Ben Lee**

During the relevant time period in 2017, Sergeant Ben Lee was the manager of Housing Unit 8 at ISCI. Plaintiff was placed in Unit 8 on January 12, 2017, when he arrived at ISCI, because there was no room for him in the RDU. Plaintiff alleges that, on

January 15, 2017, and February 7, 2017, he told Sergeant Lee "and staff" of "an imminent attack." Plaintiff alleges that, both times, Sergeant Lee failed to protect him.

Plaintiff was moved from Unit 8 to the RDU in Unit 15 on January 17, 2017. It appears that Plaintiff is alleging that he should have been moved to protective custody, instead of the RDU. Plaintiff has not stated any facts about what kind of "attack" was imminent either time, or why he believed an attack was "imminent."

Plaintiff alleges that Lee violated his Eighth Amendment rights by failing to protect him, failing to communicate with RDU managers about warnings Lee received, failing to act in accordance with IDOC policy (a policy breach is only *evidence* of wrongdoing, and not an Eighth Amendment violation in itself), and acting with deliberate indifference and reckless disregard for his safety.

Plaintiff will be permitted to proceed on his claims against Sergeant Lee, because Plaintiff has alleged that Lee personally participated in an Eighth Amendment violation by hearing and ignoring Plaintiff's verbal concerns about his safety regarding the January 18, 2017, incident. Because there is insufficient evidence to show that prison officials did not act appropriately regarding a February reporting of threats against Plaintiff or that he suffered harm (see discussion directly below), Plaintiff may not proceed on that claim.

3.  **Defendants Carlin, McKay, Blades, Higgins, and Hansen**

The records submitted by Defendants show that, after the assault by Pierce, Plaintiff was placed in a different unit, Housing Unit 9. When Plaintiff felt threatened by his new cell mate and other prisoners there, he informed staff, and he was removed from

Housing Unit 9 the next day, on February 8, 2017, and placed in restrictive housing on segregation pending investigation (SPI) status. (Dkt. 17-3, p. 2.) The investigations team recommended protective custody, but housing staff denied Plaintiff protective custody on February 21, 2017. Plaintiff was reassigned to a different unit, Housing Unit 14, on February 28, 2017. Plaintiff reported no assaults or threats of assaults after that time. He was transferred to the Orofino facility, which generally houses individuals who need some level of protection. He was then transferred to Texas, despite his attempts to instead be transferred to Montana on an outstanding detainer (the subject of another of Plaintiff's federal lawsuits). (*See* Dkt. 17.)

Plaintiff alleges that Warden Blades (or another prison official) deleted the January 18, 2017, assault records from his prison files. There is no evidence in the record to suggest anyone deleted the records other than possibly Sergeant Higgins. On November 15, 2018, nearly two years after the attack, Plaintiff filed a grievance stating that, on January *2*, 2017 (another wrong date), he was attacked, and that he has been attempting to find out who attacked him to ensure that he not be housed with the attacker again, but that the information had been deleted from the computer. (Dkt. 17-4, p. 3.) Defendant Higgins responded on appeal: "At no time is there any indication in your medical records, investigation records or the offender management system you have ever been assaulted. There is no missing investigation file nor conspiracy to hide the attach you claim happened in January 2017 since there is no evidence that it ever took place." (Dkt. 17-4, p. 4.)

Clearly, Sergeant Higgins was wrong about whether the incident ever occurred, because Defendants now have produced documentation from the occurrence and the investigation. It is unclear why Higgins—if he indeed checked all of the sources he cited—did not find that information anywhere in prison or medical records. Perhaps it is because Plaintiff supplied the wrong date, perhaps Higgins did not check at all out of negligence, perhaps it was a mistake, perhaps it was never put into the system as Plaintiff contended but kept separately from his files, or perhaps there was an ill motive involved. Discovery should answer at least some of these questions. Because Higgins had personal participation in checking the files and, in fact, reported to Plaintiff that no such incident existed that could bear on his personal safety, the Court will permit Plaintiff to proceed against Higgins on an Eighth Amendment failure to protect claim and a Fourteenth Amendment substantive due process claim.

Plaintiff alleges that many wardens and officials had a hand in sending him to Texas to set him up in an environment where he could be attacked again. Plaintiff has provided no plausible factual allegations that any of these prison officials transferred him to Texas out of a motive to cause his harm, or that his attacker was transferred to Texas. In fact, Defendants have provided the attacker's prison records to show that he was not transferred to Texas, but to Idaho State Correctional Center (ISCC). In the course of being transferred from the Idaho Orofino facility to Texas, Plaintiff spent several days at ISCC, but he was in H Block, and Pierce was in B Block.

Plaintiff has provided no support for his allegation that perhaps the attacker was not the person he identified on January 18, 2017—the tallest person in the unit, Tyler

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

James Pierce, who is 6 feet, 5 inches tall. Pierce was found to have blood on his shoes and coveralls, which he dubiously attributed to "popping a pimple on his face." (Dkt. 17-2, p. 9.) As mentioned above, Plaintiff's more recent pleadings have turned from an all-out effort to identify his January 2017 attacker and a demand to be protected from him to unsupported allegations that a prisoner named "Stevens" may have posed a threat to him during the journey to Texas, with no documentation to support that he previously complained about Stevens to prison staff through the administrative grievance system.

Plaintiff also alleges that these officials ignored his requests about remedying his general feeling that he was and is living in fear. Plaintiff has not stated sufficient facts to show that Defendants knowingly placed him a dangerous situation, given that he was removed from Housing Unit 9 immediately when he reported a threat; he was considered for protective custody, but was instead transferred to Housing Unit 14 and then to the Orofino facility, where he lived peaceably; he has not suffered an attack by Stevens or another prisoner in Texas; and he has alleged no facts supporting a malicious motivation regarding Higgins' records search and report of no prior incidents to Plaintiff.

For all of the foregoing reasons, Plaintiff has not stated a claim upon which he can proceed regarding any of these allegations against these Defendants, except as to Defendant Higgins—and that is a conclusion based on a very liberal construction of the pleadings. If Plaintiff finds facts to support any of these claims during discovery, he may move the Court to amend his pleadings.

### 4. Warden Randy Blades, Captain Woodward, and Warden's Office Staff

Plaintiff alleges that Warden Blades (or "whoever was warden of ISCI" in January-February 2017), and the warden's office staff were informed by Plaintiff's offender concern form on January 15, 2017, that he was going to be beaten up in prison. It is unclear if Plaintiff means the same concern form he wrote on January 12, 2017, or a second concern form he wrote on January 15, 2017. Neither is in the record, and there are no factual allegations showing receipt by any of these Defendants of any concern forms about the threats. There are no plausible allegations connecting Warden Blades (or another warden) or Captain Woodward to Plaintiff's attacks or injuries. Plaintiff alleges that, during this same time period, he complained to prison staff and officials of not receiving his glasses, medication, paperwork, envelopes, or attorney visits; however, that was *not* notice that Plaintiff was going to be physically assaulted.

Plaintiff also alleges that the January 18, 2017, attack was the fault of Blades and Woodward because they did not "enforce[] policy, failure to protect to lower supervisors." (Dkt 22, p. 4.) These allegations are too vague to be actionable and merely restate a legal standard of care.

Randy Blades later became Chief Deputy Warden. In Plaintiff's own words, he says that Blades "deliberately forced me into the RDU to get beat up because he was my employer and I quit my job. He knew of danger and moved me into harm's way. He then deleted my files and then allowed Wardens Carline and McKay and Higgins 2019 violated P&P to have me beat up again!" (Dkt. 22, p. 8 (verbatim).) The factual support for this claim appears to be that (1) Plaintiff continuously requested to know the identity

of his attacker, but prison officials would not tell him; (2) when Plaintiff was about to be transferred to Texas in 2018, Plaintiff asked correctional officers to look in his file to find out the names of the persons flagged in his file who should not be housed with him, but they said there were no "do not house together" flags in his file and that there was no record of a January 2017 assault on file; and (3) when Plaintiff was sent to Texas, he had to sit on the bus and temporarily bunk with a prisoner named Stevens, who had threatened to beat him up in the past (under unknown circumstances). (Dkt. 22-1, p. 16.).

While these things may have happened to Plaintiff, he has not provided facts showing "who did what," nor has he provided facts showing any causal connection between any of these Defendants and an actionable harm. Currently, there are insufficient factual allegations in the record to support a claim against the warden, the captain, or any member of the warden's office staff. Plaintiff will not be permitted to proceed against them at this time, but may request leave to add them later if he obtains facts through discovery pointing to their participation in the alleged constitutional violations.

Plaintiff is reminded that there is no respondeat superior liability under §1983, meaning a supervisor cannot be sued simply because he or she is a supervisor. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, Plaintiff must discover and allege facts showing that a supervisor participated in an alleged constitutional violation by: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in

the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205-09 (9th Cir. 2011) (internal quotations and punctuation omitted). It is not enough just to repeat these standards, but facts supporting such claims must be brought forward.

5.      **Allegations about Unknown State Actors**

Plaintiff asserts that the correctional officer in the RDU who had "done the rounds" before Plaintiff returned from Pendyne on January 18, 2017, should have noticed that his door was ajar, while the doors to all the other cells were locked. Plaintiff alleges that the unlocked cell door caused Pierce to be able to assault him. However, Plaintiff has not named the correctional officer or alleged facts supporting anything more than negligence in leaving his cell door unlocked.

Plaintiff cannot proceed against any of the unnamed state actors listed in his Amended Complaint. He may seek to discover their identities and facts supporting a cause of action during the next phase of litigation and thereafter seek to amend his Amended Complaint.

6.      **Texas Housing Claims**

Plaintiff asserts that, in the Texas prison, he has been "threatened off Tiers B-1, A-3, C-1, and C-2." (Dkt. 22.) He again asserts that he is not liked there because he was a former IDOC employee and is a sex offender. Plaintiff's Texas housing problems amount to a different claim that should be pursued in Texas against Texas prison officials and against any Idaho officials who personally participated in the decision to continue to

house him in Texas if they know that he has been "threatened off Tiers B-1, A-3, C-1, and C-2.

In fact, Plaintiff *is* currently pursuing such an action and attaches as an exhibit a copy of a "Motion to Enter Emergency Injunction against Geo Group, Inc." in a lawsuit now pending in the United States District Court for the Western District of Texas, under Case No. DR19-cv-055. Plaintiff has named IDOC officials Hansen and Higgins in that suit. In his motion, Plaintiff again says that he does not know the identity of his attacker and fears he is in the Texas prison with him. However, he *does* now know the identity of the attacker and the attacker is *not* in Texas with him, according to IDOC records. In addition, Plaintiff cannot carry on two separate lawsuits over the same claims. The Texas housing claims against both Texas and Idaho officials must be pursued in the pending Texas lawsuit, unless the presiding judge of that Court decides otherwise.

7.      **Conclusion**

Plaintiff may proceed against Sergeant Ben Lee on Eighth Amendment claims related to a failure to protect Plaintiff from the incident that occurred on January 18, 2017. Plaintiff may also proceed against Defendant Sergeant Higgins on an Eighth Amendment failure to protect claim and a Fourteenth Amendment substantive due process claim regarding Higgins' response and alleged reckless or purposeful inaction arising from acts underlying the grievance response of November 15, 2018. Plaintiff may not proceed against any other Defendant on any other allegations at this time.

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice.

2. Defendants' Motion for Reconsideration of the Initial Review Order (Dkt. 13) is DENIED as MOOT.

3. Plaintiff's "Motion to Defend Initial Reviewing Judges Order" (Dkt. 14 in part) is GRANTED to the extent that a Martinez Report was still required, and Plaintiff's Motion to Produce Martinez Report (Dkt. 14 in part) is DENIED as MOOT.

4. Plaintiff's second Motion to Proceed in Forma Pauperis (Dkt. 20) is DENIED as MOOT.

5. Plaintiff's Motion to Amend (Dkt. 21) is GRANTED in part, as set forth herein. However the entire Motion is exceedingly messy, to the point of being illegible. **Plaintiff shall not submit any further documents to the Court or any correspondence, discovery requests, or discovery responses to Defendants that are not**

**carefully and neatly handwritten, with no writing scrawled in the margins or obscuring the text of the document**. The Court will strike any future items that are as messy as the Motion to Amend, because illegible writing compromises the ability of the Court and Defendants to discern Plaintiff's communications and allegations. Under the Federal Rules of Civil Procedure, Defendants must be able to respond to Plaintiff's factual allegations and legal arguments; illegible documents prevent that from happening.

6. Defendants shall submit a sealed, unredacted copy of the Martinez Report exhibits only to the Court within 60 days after entry of this Order. Defendant shall state whether the redactions were made for this litigation and generally why they were made, or that they were already in Plaintiff's file when Defendants performed their Martinez Report investigation and generally when and why they were made.

7. At the same time, Defendants shall submit to Plaintiff a notice clarifying whether the redactions were made for this litigation and generally why they were made, or that they were already in Plaintiff's file when Defendants performed their Martinez Report investigation and generally when and why they were made. Defendants are not required to disclose information that would affect security or privacy.

8. The parties need not resubmit to each other during discovery any

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

documents or information submitted with or contained in the Martinez Report or the Amended Complaint.

9. Also within 30 days after entry of this Order, Plaintiff and Defendants shall submit to the Court and each other, a copy of Plaintiff's January 12, 2017, and January 15, 2017, offender concern forms, or state why they have not been submitted.

10. Plaintiff may proceed against Sergeant Ben Lee on Eighth Amendment claims related to a failure to protect Plaintiff from the incident that occurred on January 18, 2017. Plaintiff may also proceed against Defendant Sergeant Higgins on an Eighth Amendment failure to protect claim and a Fourteenth Amendment substantive due process claim regarding Higgins' response and alleged reckless or purposeful inaction arising from the grievance of November 15, 2018. All other claims against all other Defendants are DISMISSED, and Defendants Biladeau, Blades, Carlin, McKay, Blades, Hansen, Woodland, RDU Staff, 8-House Staff, Warden's Office Staff, and "2 @ SICI" are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[1]

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

11. Defendants Ben Lee and Sergeant Higgins will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Federal Rule of Civil Procedure 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Amended Complaint (Dkt. 22), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

    **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706 on behalf of Defendants **Ben Lee and Sergeant Higgins.**

12. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice

---

pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 16**

within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

13. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

14. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

15. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

16. Dispositive motions must be filed no later than 300 days after entry of this Order.

17. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

18. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

19. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

20. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

21. Plaintiff must notify the Court immediately if Plaintiff's address

changes. Failure to do so may be cause for dismissal of this case without further notice.

22. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: April 9, 2020

B. Lynn Winmill
U.S. District Court Judge