UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL EARL BOSSE,<br><br>        Plaintiff,<br><br>vs.<br><br>I.D.O.C. R. BLADES, CARLIN, McKAY, HIGGINS, HANSEN, LEE, BILADEAU, CAPTAIN WOODWARD, RDU and 8-HOUSE STAFF, WARDEN'S OFFICE STAFF, AND 2 @ S.I.C.I.,<br><br>        Defendants. | Case No. 1:19-cv-00271-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are several motions of the parties that are ripe for adjudication including a Motion for Dismissal or Summary Judgment filed by Defendants that requests dismissal of this entire case. (Dkt. 48.) That, and all other motions, are fully briefed. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 30.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having reviewed the record in this matter, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if the party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party

is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be stricken. Fed. R. Civ. P. 56(c)(2). Submitted affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for

summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving for summary judgment does not bear the ultimate burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated

document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," or if a litigant needs more time to obtain declarations or do discovery, the Court may "give an opportunity to properly support or address the fact," "defer considering the motion nor deny it," or "issue any other appropriate order." Fed. R. Civ. P. 56(d)-(e).

## CONSIDERATION OF EXHAUSTION DEFENSE

1. **Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] prisoners are required to exhaust all available prison administrative remedies before they can bring their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Courts may not engraft an unwritten 'special circumstances' exception" to excuse a prisoner's failure to follow prison policies governing administrative remedies "onto the PLRA's exhaustion requirement." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). Rather, the Supreme Court observed, "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id*.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The exhaustion requirement supports the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute prevents a summary judgment decision, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted).

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that

remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

2. **Material Facts**

The facts material to the administrative exhaustion question are included within the following sections of this decision. The steps required to complete the IDOC Grievance Process (published in the prison policy manual) are undisputed.

Plaintiff is proceeding against Sergeant Ben Lee on Eighth Amendment claims related to an alleged failure to protect Plaintiff from the incident that occurred on January 18, 2017. He is also proceeding against Defendant Sergeant Higgins on an Eighth Amendment failure to protect claim and a Fourteenth Amendment substantive due process claim regarding Higgins' response and alleged reckless or purposeful inaction arising from acts underlying the grievance response of November 15, 2018.

Plaintiff was not authorized to proceed against any other Defendant on any other allegations but was given a time period for amendment. He did not submit an amendment within that time frame.

### A. IDOC Grievance Process

During the time period in question, Plaintiff was incarcerated at the Idaho State Correctional Institution (ISCI). Inmates at ISCI were required to follow the Idaho Department of Correction (IDOC) Grievance Procedure for Offenders, which has three stages. First, an inmate with a concern must seek resolution of the problem by filling out an offender concern form (OCF), addressed to a staff person capable of resolving the issue. (Echo Barney Declaration, Dkt. 30-7, ¶¶ 5-6.) If the issue cannot be resolved through the concern form, the inmate must then file a grievance form within 30 days of the incident or problem that is the basis for the grievance. (*Id.*, ¶ 7.) If the grievance does not resolve the issue satisfactorily, the inmate must file an appeal within five days of receiving the response. (*Id.*, ¶¶ 5-8.) When all three of these steps—concern form, grievance form, and grievance appeal—are completed, the administrative grievance process is exhausted. (*Id.* at ¶ 11.)

An offender who does not file a grievance form, or who does not file an appeal, or who files a grievance outside the time limit, has not properly exhausted the administrative remedies. *Id*. When a Grievance Form is incorrectly filled out, it is sent back to the

Offender with instructions as to correcting the issue and filed as Returned Without Action ("RWA"). (*Id.*, ¶ 15.)

### B. Plaintiff's Use of Grievance Process

Plaintiff alleges that he submitted an OCF on January 15, several days prior to the date he was attacked by Inmate Pierce. The OCF was addressed to "RDU-Manager of 1E + Capt." Plaintiff says he gave the form to Sergeant Lee. Plaintiff did not put a year on the form or obtain a "received" signature and date from IDOC staff.

The OCF expresses his fear of returning to RDU because he had a "high profile" sentencing hearing and his perception that some of the inmates who rode the bus from court to the prison with him may desire to harm him because he is a sex offender. The IDOC has no record of any prison staff member having received this OCF form. However, for purposes of this motion, the Court will assume that Sergeant Lee received the concern form.

Plaintiff was attacked by Pierce on January 18, 2017. Plaintiff has not alleged or shown that he filed an OCF form or a grievance asserting that IDOC staff failed to protect him. However, on March 11, 2017, a date beyond the 30-day time limit, Plaintiff filed a grievance about a different topic:

> *The problem is*: On 1-12- I was attacked in -RDU- I want the information about whom attacked me where he is now – and his name, I am pressing charges and want to know the result of DOR.

**MEMORANDUM DECISION AND ORDER - 10**

> *I have tried to solve this problem informally by*: submitted a concern forms to the warden + investigations + Sgt. Lee 8 Unit + PSH Interviewing Panel in Jan-Feb 2017.
>
> *I suggest the following solution to the problem*: I want my name + his name placed as severe warning to separate + don't house together.

(Dkt. 22-2, p. 18 (verbatim).)

This grievance did not raise a claim of a failure-to-protect regarding the past incident; rather, it was a request pertaining to the present and future. Plaintiff sought the name of the attacker and wanted to ensure that his housing file was flagged to keep him away from that inmate.

On March 20, 2017, Plaintiff's grievance was returned to him with a grievance transmittal form. (Dkt. 22-2, p. 17.) The IDOC asserted that Plaintiff did not include an answered or signed OCF. Plaintiff asserts that staple holes on the grievance show that the "January 15th" OCF was, in fact, attached. If Plaintiff did attach the "January 15th" OCF, it nevertheless did not meet the grievance procedure, because that OCF was neither answered nor signed by IDOC staff. As would be evident, one purpose of the answer or signature requirement is to ensure that an inmate does not simply manufacture an OCF and falsely assert that it was turned in to a staff member on the date alleged.

**MEMORANDUM DECISION AND ORDER - 11**

The grievance transmittal form also says Plaintiff did not suggest a solution. Plaintiff has responding in writing on the form that: "Yes, I did, the solution is to give me his name and location." *Id*. Here also, his own description of the "solution" shows exactly what was the substance of the grievance, *i.e.*, to obtain the name of and future protection from Pierce—not to complain that there was a failure to protect Plaintiff in the past.

The grievance transmittal form also informed Plaintiff that he was "past the timeline to grieve." *Id*. Plaintiff nevertheless filed an appeal on March 27, 2017, saying:

> I tried to gain information to have posted, to protect me from this guy but the file has been deleted of the attack, where is he, wheres the file.

(Dkt. 22-2, p. 18 (verbatim).) Once again, plaintiff's request describes the focus of the grievance as present and future protection from Pierce, not a failure to protect in the past.

Plaintiff prepared an OCF dated March 20, 2017 addressed to the Warden, stating:

> Hello Sir, Sorry to bug you again. I was attacked in Jan 2017 and I asked you + everybody for his name. I am just getting the run around. I want a copy of charges pressed and his whereabouts. Thanks.

(Dkt. 22-2, p. 20 (verbatim).)

The IDOC staff response was:

> We haven't given you the run around. We're not going to tell you. We have addressed this according to our policy but giving you the name that could result in retaliation is not going to happen.

*Id*.

**MEMORANDUM DECISION AND ORDER - 12**

Once again, the issue that is the subject of the grievance was Plaintiff's desire to know the name and location of Pierce.

Further, the record contains no evidence that Plaintiff was harmed by a delay by Defendants in putting a flag in Plaintiff's file to not house him and Pierce together again; therefore, any attempt to amend this claim to match the grievance would be de minimis and not actionable. Documents provided by Defendants show that the flag ended in 2020. The IDOC website shows that Pierce was discharged from IDOC custody on December 17, 2020.[1] Therefore, there is no ongoing controversy over which to sue.

3. **Resolution of Plaintiff's First Claim**

Plaintiff's first claim is that Sergeant Lee failed to protect him from being assaulted. But there is no grievance identified by Plaintiff that he filed to notify Sergeant Lee's supervisors that Sergeant Lee (or anyone else) knowingly or recklessly failed to protect him on January 18, 2017. Rather, Plaintiff's grievance was to seek the name of the inmate who assaulted him so that Plaintiff can be assured that he is not housed with the inmate who assaulted him, in the future.

The Ninth Circuit has addressed the issue of whether a current claim in a lawsuit matches the claim that was asserted during a prison administrative review process, and has ruled that proper exhaustion occurs only when the claims are the same in both

---

[1] https://www.idoc.idaho.gov/content/prisons/offender_search/result

**MEMORANDUM DECISION AND ORDER - 13**

instances. *See, e.g., Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (Griffin's grievance appeals did not mention the alleged disregard of his lower bunk assignment, instead continuing to demand a ladder or stool to access the top bunk; therefore, his claims that prison officials disregarded an order for a lower bunk was not properly exhausted). *See also McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011) (The district court correctly concluded that the claims by Spooner, Iloff, Dacus, and Mourland failed to alert CDCR that their grievances sought redress for the absence of a paid Wiccan chaplaincy—an allegedly unexhausted claim in the complaint. In particular, "Spooner's grievance stated that CDCR did not have a full-time chaplain, but did not suggest a full-time chaplain was required, instead proposing that Spooner himself serve as an inmate minister. Iloff's grievance alleged religious discrimination in the form of unequal access to worship spaces. Dacus similarly grieved of inadequate access to sacred items and generally inadequate accommodations of minority religions. Mourland alleged insufficient access to Wiccan vendors of religious materials. These grievances give notice that inmates allege the prison policies fail to provide for certain general Wiccan religious needs and free exercise, but do not provide notice that the source of the perceived problem is the absence of a paid Wiccan chaplaincy.").

The record is clear that Plaintiff has never grieved Claim 1. Therefore, it is subject to dismissal, without prejudice. However, because this claim is now beyond the

statute of limitations period, the dismissal without prejudice functions as a dismissal with prejudice, meaning the claim cannot be brought in a new lawsuit.

4. **Resolution of Plaintiff's Second Claim**

In its Successive Review Order, the Court also permitted Plaintiff to proceed with a due process claim against Sergeant Higgins because it was unknown why Higgins responded to Plaintiff's grievance that Plaintiff had not been attacked. The *Martinez* Report reveals that reason. (Dkt. 17.) Plaintiff's grievance specifies that he was attacked on January 2, 2017. Accordingly, Sergeant Higgins asked the facility to pull the records from January 2, 2017. As the record indicates would be the case, there is no record of an assault on that date because the date Plaintiff was assaulted was January 18, 2017. Because Sergeant Higgins' request for information was premised upon the facts provided by Plaintiff, the request which came back did not indicate that any assault had occurred on January 2, 2017. That Sergeant Higgins overstated the results of the inquiry by saying *no* assaults occurred in January 2017 does not change the fact that the subject of Plaintiff's grievance was an assault on January 2, 2017, and the grievance is responsive to that complaint—no assaults occurred on that date.

This claim is subject to dismissal under the Court's continuing screening authority because there are no facts supporting a due process claim against Sergeant Higgins for knowingly conveying the information (albeit in imprecise language) that Plaintiff was not

**MEMORANDUM DECISION AND ORDER - 15**

assaulted on January 2, 2017. In short, Higgins did not make a knowingly false statement, even though Plaintiff requested information which may not have been specific to the information he may have thought he was seeking. There is no surprise in that.

Under the PLRA, the Court retains screening authority to dismiss claims "at any time" during the litigation, regardless of fee payment. 28 U.S.C. § 1915(e)(2)(B). At this time, the expanded record definitively shows that Plaintiff was not assaulted on that date, and therefore there were no IDOC records to produce for that date. Plaintiff cannot fault another party for his own mistake in identifying the records that he seeks. For these reasons, no due process claim lies against Sergeant Higgins.

## OTHER PENDING MOTIONS

On October 6, 2020, Plaintiff filed a Motion for Emergency Injunction, claiming that prison officials were preventing him from filing documents in this matter. (Dkt. 47.) However, Plaintiff filed numerous documents after that date. He also complains of various instances of IDOC employee misconduct alleged to have occurred during his transfers between prisons. That is a past and not a present concern, and, therefore, is not the proper subject matter of a request for a preliminary injunction to preserve the status quo pending resolution of litigation. Because this entire case is subject to dismissal, the Motion for Emergency Injunction will be denied.

Plaintiff has filed a Motions for a Petition for Writ of Habeas Corpus ad Testificandum, which is a request for an individual to be compelled to testify at a court hearing; no hearings are scheduled in this action. (Dkt. 51.) He has also filed a Motion for Compel Answers to Interrogatories. (Dkt. 54.) Defendants have declared that they responded to Plaintiff's discovery request. (Dkt. 56.) Plaintiff also desires to subpoena former Governor Otter to court, but there are no court hearings scheduled, nor is there any reason evident in the record to grant such a request as part of Plaintiff's discovery.

Plaintiff has not shown that these items are necessary to his responses to, or make any difference in the adjudication of, the pending Motion for Dismissal or Summary Judgment. Because this entire action is being dismissed for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted, his requests regarding discovery and subpoenas will be denied.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Dismissal or Summary Judgment (Dkt. 48) is GRANTED.
2. The claim against Sergeant Higgins is dismissed for failure to state a claim under 28 U.S.C. § 1915A.
3. Plaintiff's Motion for Emergency Injunction (Dkt. 47) is DENIED.

4. Plaintiff's Motion for Petition for Writ of Habeas Corpus ad Testificandum (Dkt. 51) is DENIED.

5. Plaintiff's Motion to Force/Compel Answers to Interrogatories and Subpoena Governor Butch Otter (Dkt. 54) is DENIED.

6. This entire case is DISMISSED.

DATED: May 5, 2021

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge